SECOND DEPARTMENT, AUGUST, 1969.

(August 26, 1969)

SAMUEL J. ABATE, as a Taxpayer of the County of Rockland and as a Representative of Others Similarly Situated, Appellant-Respondent, and JUNE MOLOF et al., as Individuals and as Representatives of Others Similarly Situated, et al., Intervenors-Appellants-Respondents, v. PAUL F. MUNDT et al., Constituting the Board of Supervisors of the County of Rockland, et al.,

Respondents-Appellants.— Judgment of the Supreme Court, Rockland County, entered July 31, 1969, affirmed, without costs, insofar as appealed from. No opinion.

BELDOCK, P. J. (dissenting). On this appeal, we have been called upon to determine the validity of the multi-member district reapportionment plan for the new County Legislature proposed by the Board of Supervisors of the County of Rockland. A subsidiary question is whether an individual elected as a town supervisor may automatically serve as a county legislator without standing separately for election to the legislative post. Special Term and a majority of this court has approved the reapportionment plan but has held that a candidate for the offices of both supervisor and county legislator must seek election to each post separately. I agree with this determination in part only. In my opinion, the reapportionment plan is unconstitutional.

The proposed reapportionment plan seeks to implement the " one man, one vote " principle by dividing the county into five election districts, the boundaries of which are coterminous with the boundaries of the five towns in Rockland County, and by apportioning a varying number of elective positions to each district, depending upon its population. The following chart adequately displays the mathematics of the plan:

| District | Legislators | Population | Population per Legislator |
|---|---|---|---|
| No. 1 Stony Point ........... | 1 | 12,114 | 12,114 |
| No. 2 Haverstraw ........... | 2 | 23,676 | 11,838 |
| No. 3 Ramapo .............. | 6 | 73,051 | 12,175 |
| No. 4 Clarkstown ........... | 5 | 57,883 | 11,577 |
| No. 5 Orangetown ........... | 4 | 52,080 | 13,020 |
|  | 18 | 218,804 |  |

The result of this allotment is that Orangetown is under-represented by 7.1% and that Clarkstown is over-represented by 4.8%*. This yields a maximum variance of 11.9%.

Two recent United States Supreme Court decisions (*Kirkpatrick* v. *Preisler,* 394 U. S. 526; *Wells* v. *Rockefeller,* 394 U. S. 542) have cast considerable doubt upon the heretofore-assumed validity of reapportionment plans which managed to achieve *de minimis* variations but which well short of exact mathematical equality. · In the *Kirkpatrick* and *Wells* cases, the court struck down single-member Congressional reapportionment plans with variances of 5.97% and 13.1% respectively. At bar, we are faced with a variance of 11.9% in a multi-member scheme involving a county legislature. In *Town of Greenburgh* v. *Board of Supervisors* (32 A D 2d 892, affd. 25 N Y 2d 817), the Court of Appeals concurred in our approval of Westchester's single-member district plan with a maximum variance of 12.8%. I reject, however, the suggestion that, because the variance here is 11.9%, the approval of Westchester's reapportionment plan in the *Town of Greenburgh* case automatically brings the plan at bar within the ambit of constitutional standards. In my opinion, the reasoning of the *Kirkpatrick* and *Wells* cases is decisive of this appeal and we cannot justify an affirmance here solely upon the mathematics of *Town of Greenburgh*. In *Kirkpatrick* (394 U. S. 526, 530–531, *supra*) the court stated: " We reject Missouri's argument that there is a fixed numerical or percentage population

---

* The average population per legislator is 12,156. Thus, Stony Point is over-represented by 0.3%; Haverstraw is over-represented by 2.5% and Ramapo is under-represented by 0.2%.

variance small enough to be considered *de minimis* and to satisfy without question the 'as nearly as practicable' standard. The whole thrust of the 'as nearly as practicable' approach is inconsistent with adoption of fixed numerical standards which excuse population variances without regard to the circumstances of each particular case. The extent to which equality may practicably be achieved may differ from State to State and from district to district. Since 'equal representation for equal numbers of people [is] the fundamental goal for the House of Representatives,' *Wesberry* v. *Sanders* [376 U. S. 1], *supra,* at 18, the 'as nearly as practicable' standard requires that the State make a good-faith effort to achieve precise mathematical equality. See *Reynolds* v. *Sims,* 377 U. S. 533, 577 (1964). *Unless population variances among congressional districts are shown to have resulted despite such effort, the State must justify each variance, no matter how small."* (Emphasis supplied.)

The force of this statement is not diminished because of the circumstance that the court in *Kirkpatrick* was dealing with Congressional as opposed to inter-state reapportionment (see *Reynolds* v. *Sims,* 377 U. S. 533; *Wells* v. *Rockefeller,* 394 U. S. 542, 554, *supra,* [WHITE, J. dissenting]), nor that it was concerned with a single member as opposed to a multi-member district plan (see *Burns* v. *Richardson,* 384 U. S. 73; *Swann* v. *Adams,* 385 U. S. 440; *Kilgarlin* v. *Hill,* 386 U. S. 120). In light of the *Kirkpatrick* and *Wells* cases, these distinctions are essentially meaningless in the context of the one man, one vote principle; particularly so, where, as here, we are dealing with a unicameral Legislature.

This appeal, therefore, must be dealt with in terms of the justification offered for the variance. We should not content ourselves with the happenstance that the variance in this case is less than in some other case. Notwithstanding the long history of Rockland County's attempts to reapportion, and the particular problems that the county faces, I believe that the variance has not been adequately justified. Indeed, defendants' argument on appeal makes little attempt at justification. The thrust of defendants' position on appeal (aside from arguing the abstract acceptability of a multi-member districting plan) is that the variance is *de minimis*. This argument is predicated on language in the *Reynolds* and *Swann* cases to the effect that *de minimis* variances will be accepted provided that a rational state policy underlies the basis for the variances. It seems to me, though, that the *Wells* and *Kirkpatrick* cases provide the guidelines for determining rationality. In justification of the variance, the defendants lay stress on the plans use of existing town lines. This reasoning, however, was rejected by the court in *Wells* v. *Rockefeller* (394 U. S. 542, 546, *supra*) where New York sought to justify variances by pointing to the maintenance of county lines. The court stated: "New York tries to justify its scheme of constructing equal districts only within each of seven sub-states as a means to keep regions with distinct interests intact. But we made clear in *Kirkpatrick* that 'to accept population variances, large or small, in order to create districts with specific interest orientations is antithetical to the basic premise of the constitutional command to provide equal representation for equal numbers of people.'"

Defendants' counter-argument that the use of town lines is an obstacle to gerrymandering was met by the court in *Kirkpatrick* (394 U. S. 526, 534, *supra*): "The State's interest in constructing congressional districts in this manner, it is suggested, is to minimize the opportunities for partisan gerrymandering. But an argument that deviations from equality are justified in order to inhibit legislators from engaging in partisan gerrymandering is no more than a variant of the argument, already rejected, that, considerations of practical politics can justify population disparities." In sum, it seems clear that no attempt has been made to achieve a mathematical balance within the standards set forth by the

Supreme Court. The plan at bar merely seeks to achieve the best apportionment against the preconceived notion that the towns must stay intact — a motion which has been rejected by the Supreme Court in its latest pronouncements.

Though I believe that the within plan is unconstitutional, I would not recommend that it be disapproved. Because the last day for filing nominating certifications is imminent (September 5), I feel that our unreserved disapproval, for obvious reasons, would be ill-advised (see, *Kilgarlin* v. *Hill*, 386 U. S. 120, 121; *Martin* v. *Bush*, 376 U. S. 222, 223). Accordingly, I would modify the judgment only to the extent of directing that a new reapportionment plan be submitted after the election of November 4.

Brennan, Rabin, Munder and Kleinfeld, JJ., concur in decision; Beldock, P. J., dissents in separate opinion and votes to modify the judgment in accordance therewith.

Judgment affirmed, etc.